UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHANG LIM,

                    Plaintiff,            CIVIL ACTION NO. 11-12983

                                          DISTRICT JUDGE PAUL D. BORMAN

v.
                                          MAGISTRATE JUDGE MARK A. RANDON

TERUMO CORPORATION, et al.,

                    Defendants.

_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION FOR CONTEMPT AND FOR SANCTIONS (DKT. NO. 94); GRANT IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 103); AND, DENY PLAINTIFF'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT (DKT. NO. 102)

## I.    INTRODUCTION

Chang Lim's employment at Terumo Heart, Incorporated ("THI") was short-lived: THI fired Lim less than seven months after his employment began. THI says Lim was a poor performer and disruptive workplace presence; Lim, who is South Korean, alleges that he was retaliated against and discharged because of his race, national origin, color and vocal opposition to THI's violations of internal and external regulations.

Asserting violations of Title VII of the Civil Rights Act of 1964, Michigan's Whistleblower Protection Act and several other state laws, Lim sues 13 corporate and individual defendants (collectively, "Defendants").[1] THI counterclaims that Lim misrepresented his

_____

[1] As to the majority of the defendants, Lim does not clearly allege that they caused him any harm, and his claims against them should be dismissed for this reason alone. Instead, Lim's claims deal primarily with the alleged conduct of THI, Keith Proctor, William Pinon, and Gael Tisack.

-1-

qualifications and work history during the application process, and was unjustly enriched as a result.[2]

Three motions are pending: Lim's motion to dismiss, or in the alternative, for summary judgment on Defendants' counterclaims and Lim's second amended complaint (Dkt. No. 102);[3] Defendants' motion for summary judgment (Dkt. No. 103); and, Defendants' motion for contempt and for sanctions (Dkt. No. 94). Judge Borman referred the motions to this Magistrate Judge (Dkt. No. 95; Dkt. No. 104). The motions are fully briefed (Dkt. Nos. 101, 107, 112, 113, 116, 117), and, having thoroughly reviewed the pleadings, this Magistrate Judge dispenses with oral argument. *See* E.D. Mich. LR 7.1(f)(2).

Distilled to its essence, Lim fails to provide enough evidentiary support to make out any of his federal or state law claims. As such, this Magistrate Judge **RECOMMENDS** that Lim's motion be **DENIED**, Defendants' motion for summary judgment be **GRANTED** as to Lim's claims, and Defendants' state law counterclaims be **DISMISSED WITHOUT PREJUDICE**, and Defendants' motion for contempt and for sanctions be **DENIED AS MOOT**.

---

[2] Although the counterclaims were filed by Defendants, THI – as Lim's former employer – is the only party with standing to bring these counterclaims against Lim.

[3] Although Lim's motion for summary judgment is titled in part as a motion for summary judgment on his second amended complaint, his motion almost exclusively addresses Defendants' counterclaims, and otherwise substantiates no arguments on his own claims. Furthermore, Lim's motion primarily proceeds under the motion to dismiss standard – an untimely motion – and consists of conclusory rebuttal: Lim repeatedly states that Defendants' counterclaims are "baseless, false, retaliatory, and discriminatory" (Dkt. No. 102-1). *See* Fed. R. Civ. P. 12(b)(6) (defenses "must be made before pleading if a responsive pleading is allowed"). As such, his motion should be **DENIED**. In his motion, Lim also requests time to file additional documents in support of his motion, pursuant to L.R. 7.1(g) (Dkt. No. 102 at p. 2 (CM/ECF)). He does not state what additional documents he aspires to include. Discovery is closed; Lim took no depositions. This Magistrate Judge sees no reason why allowing Lim additional time to file documents would be helpful to his motion. As such, Lim's request should be **DENIED**.

## II.      IDENTIFICATION OF DEFENDANTS AND PROCEDURAL HISTORY

THI is a medical device start-up company with operations in Ann Arbor, Michigan (Dkt. No. 103, Ex. A). THI's only product is the DuraHeart left ventricular assist device ("DuraHeart"), "an implantable device that combines patented magnetic levitation and centrifugal pump technologies to assist the left side of the heart in pumping blood" (Dkt. No. 23, Ex. C). THI endeavors to achieve FDA approval and commercialization of DuraHeart (Dkt. No. 103, Ex. A).

William Pinon ("Pinon"), an Asian-American, is THI's President and CEO; Keith Proctor ("Proctor"), Lim's direct supervisor during his time with THI, is Director of Regulatory Affairs (*Id.*, Dkt. No. 103, Ex. C). Gael Tisack ("Tisack") is THI's Compliance Officer, responsible for investigating formal employee complaints (Dkt. No. 103, Ex. B). Steve Smith ("Smith") is another employee of THI (Dkt. No. 113 at p. 7).[4]

THI is a subsidiary of its Japanese parent company, Terumo Corporation ("TC") (Dkt. No. 103, Ex. A). Chisato Nojiri is Chief Medical Officer of TC; Koji Nakao is Chairman of TC; and, Yutaro Shintaku is President of TC (Dkt. No. 40 at ¶¶ 9-10).

Terumo Cardiovascular Systems ("TCVS") is also a subsidiary of TC with operations in Ann Arbor (Dkt. No. 103, Ex. A). Defendants describe TCVS as a corporate entity separate and distinct from THI:[5] it is an established surgical device manufacturer that actively produces and sells

---

[4] All page numbers refer to CM/ECF pagination.

[5] Throughout his pleadings, Lim seems to suggest a sort of nefarious conflation of TCVS and THI. He claims that: TCVS was actually doing business as THI; he was actually employed by TCVS, because he was under TCVS's payroll system and worked with TCVS's Human Resources Department; and, Tisack is an employee of TCVS (Dkt. No. 40 at pp. 2-3 (CM/ECF)). Lim similarly states that TAH is doing business as TCVS (Dkt. No. 40 at ¶ 7). But, Lim's offer of employment, which he signed, explicitly states that he was to be employed by THI (Dkt. No. 103, Ex. C).

commercialized surgical devices, none of which include DuraHeart (*Id.*). Mark Sutter ("Sutter") is an employee of TCVS (Dkt. No. 40 at ¶ 12).

Terumo Americas Holdings, Inc. ("TAH") is another subsidiary of TC. Kazuaki Kitabatake is President and CEO of TAH (*Id.* at p. 3).

Lim filed his Complaint on July 12, 2011 (Dkt. No. 1), and his Amended Complaint on July 31, 2011 (Dkt. No. 3). Defendants – with the exception of Kazuaki Kitabatake, Koji Nakao, and Yotaro Shintaku, none of whom had yet been added to Lim's Complaint – filed Counterclaims, and Lim answered (Dkt. Nos. 22, 23). This Court then granted leave for Lim to file his Second Amended Complaint, and Lim filed accordingly (Dkt. No. 40).[6]

Discovery is closed. Lim did not take a single deposition. Defendants did depose Lim. However, he was uncooperative throughout the deposition, and Defendants moved to compel him to submit to continuation of his deposition and a physical examination (Dkt. No. 65). This Magistrate Judge granted Defendants' request (Dkt. No. 86).

Lim failed to appear for the scheduled continuation of his deposition (Dkt. No. 103, Ex. E), and, alleging that Lim's conduct violated this Court's order, Defendants filed a motion for contempt and for sanctions against him (Dkt. No. 94). With that matter pending, Lim and Defendants' motions for summary judgment were filed (Dkt. Nos. 102, 103).

---

[6] Plaintiff also requested leave to file a third amended complaint; that request was denied (Dkt. No. 75).

-4-

### III.    BACKGROUND

#### A.  *Lim's Hire and Rocky Relationship with his*
####     *Immediate Supervisor, Keith Proctor*

In early March of 2010, Proctor interviewed Lim for a position in THI's Regulatory Affairs department; soon thereafter, THI offered Lim the position of Regulatory Affairs Manager, reporting directly to Proctor, the Director of Regulatory Affairs (Dkt. No. 40 at ¶¶ 18-19). Lim's at-will employment with THI became effective March 29, 2010 (*Id.*; Dkt. No. 103, Ex. C). His job responsibilities included providing interpretive guidance of Food and Drug Administration ("FDA") regulations (Dkt No. 103, Ex. A at ¶ 8).

On his first day at THI, Proctor asked Lim to investigate whether THI's Senior Director of Quality Assurance committed a "deliberate cover-up . . . of quality activity" (Dkt. No. 40 at ¶ 21). Lim ultimately decided that Proctor's request stemmed from a "personal vendetta" against the Senior Director of Quality Assurance, and recused himself from the investigation (*Id.*). It is not clear how soon after Lim undertook Proctor's request that he recused himself. But, once he did, Lim believes that Proctor gradually diminished his degree of responsibility until he was "completely prevented [] from performing his dut[ies] and delivering his work products" (Dkt. No. 40 at ¶ 22). Lim also alleges that Proctor had been facilitating the violation of internal quality management systems and FDA regulations (*Id.* at ¶ 23).

On July 15, 2010, Lim, concerned about "further violations [that would] harm[] patients," emailed CEO Pinon directly (*Id.* at ¶ 27). He wrote that "[Regulatory Affairs ("RA")] functions have been significantly compromised," named Proctor, and asked to report directly to Pinon in

order to bring THI into compliance with regulatory bodies (*Id.* at ¶ 27; Dkt. No. 113 at p. 6). Pinon

forwarded Lim's concerns to Compliance Officer Tisack for investigation (Dkt. No. 103, Ex. B).[7]

On August 24, 2010, Lim sent an email to Pinon and copied Nojiri, a different higher-up at

TC; again, he expressed vague concerns about patient safety, and asked to bypass Proctor and

report directly to Pinon (Dkt. No. 40 at ¶ 28; Dkt. No. 113, Ex. G). Lim believed that Proctor had

"not provided any support for [pre-market application] activities" and "damaged [] quality and

business processes . . . due to his lack of relevant experience and knowledge" (Dkt. No. 40 at ¶ 28;

Dkt. No. 113, Ex. G). The next day, Pinon referred these concerns to Tisack, and she continued her

investigation of Lim's complaints (Dkt. No. 40 at ¶ 28; Dkt. No. 103, Ex. B).

### B.  Tisack's Initial Meeting with Lim

Tisack's investigation determined that Lim's complaints were "irresponsible, unsupported,

disrespectful and created dissension," while Proctor's instructions were properly within his

discretion as Lim's supervisor (Dkt. No. 103, Ex. B). On August 30, 2010, Tisack met with Lim

and shared her findings (Dkt. No. 40 at ¶ 29); she asked Lim to stop making "false and

inflammatory allegations" (Dkt. No. 103, Ex. B).

On September 1, 2010, Lim emailed Tisack a written summary of his concerns (*Id.*, Ex. B;

Dkt. No. 40 at ¶¶ 29-30). It consisted of 29 exhibits, which Lim describes as evidence of

discriminatory and retaliatory acts motivated by Lim's race, color, or national origin (Dkt. No. 40

at ¶¶ 29-30). Defendants characterize Lim's written report and accompanying exhibits as a series

---

[7] Lim appears to take issue with Tisack's role in the circumstances of his employment and ultimate termination, at least in part, because he deems Tisack as having "no adequate education, background, training, experience, knowledge and skills" (Dkt. No. 40 at ¶ 27): he criticizes Tisack's qualifications throughout his pleadings (*See, e.g., Id.* at ¶¶ 68-70).

of complaints about Proctor's job performance, which contained no allegations of product concerns or violations of FDA regulations (Dkt. No. 103 at p. 11, Ex. B).[8]

After their meeting, Lim continued to provide Tisack with additional information about Proctor's alleged violations of internal policy, and state and federal regulations (Dkt. No. 40 at ¶ 31).

### C.  The Delegation of Software Testing

On September 10, 2010, Eva Gao ("Gao"), an Asian employee and one of Lim's subordinates, was asked to perform software testing (Dkt. No. 40 at ¶ 47); Lim opposed the testing (*Id.* at ¶ 39). On September 17, 2010, Proctor emailed Lim to follow up on a conversation the two of them had about the issue: Proctor reiterated that responsibility for the software testing was with the Design group, with oversight by the Quality group – not with Lim's Regulatory Affairs group (*Id.* at ¶ 48). Soon thereafter, Lim sent an email to the director of Research and Development relaying Proctor's message (*Id.* at ¶ 49).

On September 20, 2010, Gao emailed Lim and Proctor asking whether she should join the software testing project that day (*Id.* at ¶ 50); Proctor responded first, instructing her to participate (*Id*. at ¶ 51). Lim responded next, advising that Gao *not* go. He saw her participation as a violation of the internal quality manual and FDA regulations; such violations, he cautioned, implicate "jail" and "handcuffs" (*Id.* at ¶ 52).

Lim also wrote that Gao should let Pinon – whom Lim had copied on his email – have the final say, because he "has ultimate responsibility" for all activities (*Id*. at ¶ 52). Pinon responded,

---

[8] Neither Lim nor Defendants provide the Court with a copy of Lim's summary of concerns.

stating that it was "not accurate, nor appropriate, [for Lim] to insinuate any wrongdoing or violation of regulations[,]" nor was it "a violation of either our Quality Manual or FDA regulations to assign an employee task [sic] which are necessary to drive our business" (*Id.* at ¶ 53). He instructed Gao to follow Proctor's instructions and participate in the software testing project (*Id.*).

Lim believes that Pinon's response revealed "THI's willful and reckless failure to have sufficient personnel with the necessary education, background, training, and experience to assume that all activities required by [law] are correctly performed" (*Id.* at ¶ 40).

### D. Tisack's Second Meeting with Lim and Lim's Termination

In the meantime, Tisack had completed further investigation into Lim's complaints – which involved interviewing various employees and pouring through relevant communications and documentation; she requested a second meeting with Lim on September 23, 2010 (Dkt. No. 40 at ¶ 32; Dkt. No. 103, Ex. B). During the meeting, Tisack gave Lim a copy of her brief, written report, which concluded that Lim's allegations about Proctor's performance were unfounded (Dkt. No. 40, Ex. B).

Lim claims that Tisack's report was fabricated (Dkt. No. 40 at ¶ 32). He believes that she neither listened to his concerns, nor was qualified with the education and experience to understand them (*Id.* at ¶¶ 33-35). Lim says he was simply attempting to help THI redesign and redevelop their product (*Id.* at ¶ 76).

Accordingly, Lim asked Tisack to withdraw her report, lest he officially respond to it (*Id.* at ¶ 56). Tisack did not withdraw her report, and Lim responded to the report via email reiterating his general concerns (*Id.* at ¶¶ 57-59, Ex. C).[9] Later that day – just shy of seven months from his start

---

[9] Lim's response provides no more specific insight into his concerns – or any events that

date – Lim was terminated (*Id*. at ¶ 59). Based on these events, Lim filed charges with the EEOC, and, at his request, the agency issued him a Notice of Right to Sue on June 23, 2011 (Dkt. No. 40, Ex. A).

## IV.  STANDARD OF REVIEW

### A.  Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). In a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The party opposing the motion must rely on more than mere allegations in his own pleadings. Fed. R. Civ. P. 56(e). The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("[t]he mere existence of

precipitated them – than what is represented in his pleadings.

a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

## V.    ANALYSIS

### A.  *Title VII Claims*

Plaintiff alleges that Defendants discriminated and retaliated against him because of his race, color, or national origin. Defendants argue that Lim's Title VII claims should fail for a number of procedural and substantive reasons: for instance, because the majority of the named defendants were not listed in Lim's EEOC Complaint; and, because Pinon and Proctor made the decision to both hire and fire Lim, thus implicating the same actor inference. But, because Defendants should prevail on their more central point – that Lim presents insufficient evidence to support his Title VII claims – this Magistrate Judge need not address their additional arguments. Lim's Title VII claims should not survive summary judgment.

### *1.      Discrimination*

Under Title VII, it is unlawful for an employer "to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In order to establish a case of discrimination under Title VII, a plaintiff must offer either direct or circumstantial evidence of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). "[D]irect evidence is that evidence which, if believed, requires a conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 470 (6th Cir. 2005) (internal citations and quotations omitted). Lim presents no direct evidence of

-10-

discrimination: there is no indication anywhere in the evidence presented that defendants even mentioned Lim's race, color, or national origin, let alone made an explicit expression of a discriminatory motive. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141(2000); *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 172 (6th Cir. 2004).

Rather, as discussed below, all evidence proffered by Lim requires a significant inferential step. *See Johnson v. Kroger Co.*, 319 F.3d at 858, 865 ("[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group."). Because Lim is attempting to establish his discrimination claims with circumstantial evidence, this Magistrate Judge applies the burden-shifting analysis set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 793 (1973).

The *McDonnell Douglas* burden-shifting framework is tripartite. First, the plaintiff must demonstrate a prima facie case of discrimination. *Clack v. Rock-Tenn Co.*, 304 Fed. App'x 399, 402 (6th Cir. 2008). If the plaintiff makes this showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000). "[O]nce the employer has come forward with a nondiscriminatory reason for firing the plaintiff, . . . the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Mischer v. Erie Metro Hous. Auth.*, 168 F. App'x 709, 714 (6th Cir. 2006) (citing *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1083 (6th Cir.1994) (internal quotations omitted)). Thus, the burden shifts once more to plaintiff, allowing him an opportunity to prove "by a preponderance of the evidence that the legitimate

reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.

### a. Lim's Prima Facie Case

In order to establish a circumstantial prima facie case of discrimination under Title VII, a plaintiff must show, by a preponderance of the evidence, that:

> (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and, (4) he was replaced by someone outside the protected class, or similarly situated non-protected persons were treated more favorably.

*See McDonnell Douglas*, 411 U.S. at 802; *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).

Defendants argue that Lim fails to make out a prima facie case because he cannot satisfy the fourth prong: there is no admissible evidence that Lim was replaced by someone outside the protected class, or that persons outside of the protected class received more favorable treatment (Dkt. No. 103 at p. 17).[10] Meanwhile, Lim relies upon vague, oftentimes irrelevant circumstantial evidence – much of which has only the flimsy support of Lim's own conclusory, self-referential

---

[10] Defendants also argue that Lim cannot satisfy the third prong: there is no admissible evidence that he was qualified. This, too, Lim contests. Defendants claim that Lim inflated his qualifications and misrepresented his experience, to their detriment. This point also forms the basis of Defendants' counterclaims, and, as discussed below, those are not addressed in this report and recommendation. For purposes of Lim's prima facie case only, however, notwithstanding his misrepresentations, this Magistrate Judge finds he was minimally qualified for the position – he has a graduate degree and some relevant experience. *See Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 92 (2nd Cir. 2001) ("the qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he possesses the basic skills necessary for performance of [the] job. As a result, especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw.") (internal citation and quotation omitted).

statements.[11] But, Lim does state that a "highly inexperienced" white male, Chesney, replaced

him (Dkt. No. 102-1);[12] Defendants claim that, although Chesney does occupy the same position

held previously by Lim, THI did not replace him (Dkt. No. 102, Ex. A). This Magistrate Judge

finds that, although a close call, Lim has established a prima facie case.

### b.  *Plaintiff Cannot Establish Pretext*

But, even assuming Lim *could* meet his prima facie burden, his claims nevertheless lack

the evidentiary support to survive summary judgment. Defendants have offered more than

sufficient evidence that the decision to terminate Lim was based on legitimate non-discriminatory

reasons: poor performance, including insubordination, and inappropriate and disruptive

communications to supervisors and subordinates (Dkt. No. 103 at p. 11). The record demonstrates,

*inter alia*: an example of Lim's unsatisfactory work product containing, in part, the copying and

pasting of regulatory language – for which he was supposed to provide interpretive guidance (Dkt.

No. 102, Ex. O); communications demonstrating Lim's disparagement of Proctor – including

---

[11] For example, in what this Magistrate Judge assumes is an attempt to demonstrate that Defendants routinely discriminated against Asian employees, Lim claims that, in July and October of 2011, Defendants discharged two Asian employees from the Regulatory Affairs Department of THI; but he fails to list their names or any information surrounding their termination (Dkt. No. 40 at ¶ 77). He also argues that evidence of discrimination exists in: the promotion of a Caucasian male – Defendant Smith – to Vice President of THI; the removal of THI's African-American human resources manager; the initial hiring of Proctor – despite leading "his former employer to go bankrupt due to serious deficiency of quality" – and repeated promotion of Proctor; and, Lim's belief that Defendants have brought "frivolous and false counter-claims against [him]" (Dkt. No. 113 at p. 7 (CM/ECF)). Even if true, not one of these facts would support discrimination against Lim personally, if anyone at all.

[12] Lim supports his position with two separate *portions* of a list of employees at Terumo: (1) a list of employees with last names beginning in "C," where John Chesney is listed as a Senior Regulatory Affairs Specialist (Dkt. No. 102, Ex. B); and, (2) a list of employees with last names beginning in "L," where Lim is listed as Regulatory Affairs Manager (Dkt. No. 102, Ex. C). Neither portion is dated.

Lim's multiple requests to report above Proctor, and directly to CEO Pinon; and, communications between Lim, Proctor, and Gao which involve Lim advising Gao to disregard Proctor's instructions.

Lim's burden now is to prove discrimination "to a new level of specificity" through evidence of pretext. *Burdine,* 450 U.S. at 255. Lim may establish pretext by showing that the reasons proffered by Defendants: (1) have no basis in fact; (2) are not the actual factors that motivated the discharge decision; or, (3) were nonetheless insufficient to justify discharge. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc); *see also Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n. 4 (6th Cir.2009) (cautioning that "one [should not] lose sight of the fact that at bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination").

Even if this Magistrate Judge construes Lim's pleadings and other filings with the utmost liberality, the evidence Lim offers fails to pass muster. Lim argues that Defendants' reasons for termination of Lim constitute pretext, because he performed his duty to his employer. In fact, Lim continues, Defendants' subsequent business problems – including THI undergoing "massive layoffs" and DuraHeart's ultimate failure to obtain market approval – "simply confirms . . . that [his] concerns were genuine, reasonable, very accurate and highly precise" (Dkt. No. 113 at pp. 6-7, 11). Lim's conviction in his beliefs, right or wrong, does not serve to discredit Defendants' proffered reasons for terminating Lim, which are well-documented. *See Braithwaite v. The Tinmken Co.*, 258 F.3d 488, 494 ("As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.").

-14-

Defendants believed that Lim was a disruptive employee who was not performing up to expectations.[13] Lim fails to provide evidence to the contrary. For example, Lim does not dispute Defendants' claim that Lim's work product involved the copying and pasting of regulatory language, a tactic understandably not up to snuff for an employee whose duties involved "providing interpretive guidance of regulations promulgated by the Food and Drug Administration" (Dkt. No. 103, Ex. A). It is also reasonable that an employee who makes repeated attempts – particularly in his first few months on the job – to bypass his superior; and, undermines his superior in communications with other employees would create confusion or dissension in the workplace. Lim does not contest this either.

Moreover, Tisack investigated Lim's complaints thoroughly; she reviewed relevant emails and documentation, interviewed the appropriate personnel – including Pinon, Lim, and a Research and Development Program Director – and determined that Lim's complaints were unfounded (Dkt. No. 103, Ex. B). Lim was only terminated after a second meeting with Tisack resulted in no resolution, despite Lim having been told to stop his disruptive communications. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) (the question is whether defendants made a "reasonably informed and considered decision"). Overwhelmingly, the record consistently tells the tale of a new employee dissatisfied with the approach of his supervisor from the start of his employment. It is also worth noting that Lim *never* notes any disparaging comments that were made on the basis of his nationality, race, or color.

"The broad, overriding interest, shared by employer [and] employee . . . is efficient and trustworthy workmanship assure through fair and . . . neutral employment and personnel

---

[13] Lim only discusses the specific action or inaction of Defendants Proctor, Tisack, Pinon, and THI. *See supra* n. 1.

decisions." *McDonnell Douglas*, 411 U.S. at 1823. Title VII was not designed to "diminish traditional management prerogatives." *Steelworkers v. Weber*, 443 U.S. 193, 207 (1979). The evidence on record overwhelmingly supports that Lim was terminated for his disruptive, poor performance that began almost immediately upon starting employment with THI, and Lim's attempt to "produce sufficient evidence from which the jury may reasonably reject [Defendants'] explanation" is speculative at best. *Manzer*, 29 F.3d at 1083; *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006) (noting it to be well-settled that personal beliefs, conjecture, and speculation are insufficient to support an inference of discrimination); *Hartsel v. Keys,* 87 F.3d 795, 801 (6th Cir.1996) (conclusory statements, subjective beliefs, or intuition cannot defeat summary judgment). As such, Lim has failed to offer evidence to show that Defendants' rationale was false or a pretext for discrimination.

## 2.    *Retaliation*

Title VII also protects employees from retaliation for opposing his employer's unlawful actions. 42 U.S.C. § 2000e-3(a). A plaintiff must demonstrate that his opposition was reasonable and based on a good-faith belief that the employer was acting in violation of Title VII. *See Univ. of Cincinnati*, 215 F.3d at 579. In order to establish a *prima facie* claim of retaliation, Lim must show that:

> (1) he engaged in activity protected by Title VII; (2) Defendants knew that he engaged in the protected activity; (3) Defendants subsequently took an adverse, retaliatory action against him – or he was subjected to severe or pervasive retaliatory harassment by a supervisor; and, (4) the protected activity and the adverse action were causally connected.

*Randolph v. Ohio Dept' of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006).

The burden-shifting analysis applicable to discrimination claims also applies to retaliation claims. *Williamson v. BASF Corp.*, 05-74861, 2007 WL 172533, at *8 (E.D. Mich. Jan. 19, 2007). If Lim establishes a prima facie case of retaliation, Defendants must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784 (6th Cir. 2000). Because Lim bears the burden of persuasion throughout, he must then show that Defendants' proffered reason for his termination was a pretext for retaliation.

### a. *Lim Cannot Establish a Prima Facie Case*

Defendants next argue Lim's retaliation claim cannot survive summary judgment, because he fails to satisfy the first, second, and third prong required to make out a prima facie case (Dkt. No. 103 at p. 19). As to the first prong, Defendants claim that Lim makes no showing that, at any point during his employment, he reported that he was harassed, discriminated against, or retaliated against because of his race, color, or national origin (*Id.*). This Magistrate Judge agrees.

Throughout his pleadings, Lim makes various vague and conclusory allusions to complaints; but, the record shows – and Lim offers – not one specific instance during his tenure with THI where Lim raised concerns to *any* individual or public body about *discriminatory* conduct. This Magistrate Judge also assumes that Lim did not even file his EEOC charge until after his termination; Lim certainly does not state otherwise. Nor, as discussed above, does Lim even allege facts sufficient to infer that discrimination actually occurred to him.

Instead, Lim supports his position by citing to his own pleadings and his October 1, 2010 formal response to Gael Tisack's summary of her investigation, which merely makes general reference to regulatory and quality concerns (Dkt. No. 113 at pp. 10-11). Thus, Lim's focus is on perceived violations that he deemed relevant to patient safety or product quality – none of which is

-17-

protected by Title VII. Because Lim makes no showing that his retaliation claim actually involves conduct protected by Title VII, this Magistrate Judge need not analyze Defendants' arguments under the second and third prong.

### b. *Lim Cannot Establish Pretext*

But, it is inconsequential whether Lim has made out a prima facie case of retaliation under Title VII, because, as discussed above, he has failed to create an issue of material fact for the jury as to whether Defendants' proffered reasons for his discharge were merely pretextual. *See Univ. of Cincinnati*, 215 F. 3d at 573. As such, Lim's retaliation claim should not survive summary judgment.

### B. *Whistleblowers' Protection Act Claim*

Lim next asserts a claim under Michigan's Whistleblowers' Protection Act ("WPA"), Mich. Comp. Laws § 15.361, *et seq.*, alleging Defendants retaliated against him for reporting, or being about to report, a suspected violation of a law, rule, or regulation to a public body. In relevant part, the WPA provides:

> An employer shall not discharge . . . an employee . . . because the employee . . . reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to a law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body[.]

Mich. Comp. Laws § 15.362.

A retaliation claim under the WPA is also analyzed under a burden-shifting framework analogous to the framework employed in Title VII claims. *See Whitaker v. U.S. Sec. Associates, Inc.*, 774 F. Supp. 2d 860, 867 (E.D. Mich. 2011) (citing *McDonnell Douglas*, 411 U.S. at 802);

*see also Shallal v. Catholic Social Serv. of Wayne Cnty.*, 566 N.W.2d 571, 577 (Mich. 1997)

("Whistleblower statutes are analogous to antiretaliation provisions of other employment

discrimination statutes and therefore should receive treatment under the standards of proof of those

analogous statutes." (internal quotations and brackets omitted)).

First, Lim must establish a prima facie case: (1) he was engaged in activity protected under

the WPA; (2) he was discharged or discriminated against; and, (3) a causal connection exists

between the protected activity and the discharge or adverse employment action. *West v. General

Motors Corp.*, 65 N.W.2d 468, 471-72 (Mich. 2003).

And, if he does – and the employer carries its burden to show a legitimate reason why the

employee was terminated – the plaintiff must ultimately present evidence to show that the

legitimate reason offered by the employer was not the true reason; rather, it was pretext for

retaliation. *Taylor v. Modern Engineering, Inc.*, 653 N.W. 2d 625, 628 (Mich. App. 2002);

*Roulston v. Tendercare (Michigan), Inc*., 608 N.W.2d 525 (Mich. App. 2000).

Lim cannot make out a prima facie case under the WPA: he offers no evidence that he

reported or was about to report violations of law to an external body – he offers no affidavit of his

own, and has conducted no discovery to assemble such evidence. *See, e.g., Denny v. Dow

Chemical Co.*, 2011 WL 92964, at *5 (Mich. App. 2011) (*internal* reporting of a violation or

suspected violation of law is not protected activity under the WPA); *Chandler v. Dowell

Schlumberger Inc.*, 572 N.W.2d 210, 213 (Mich. 1998) ("an employee seeking protection under

the 'about to report' language of the [WPA must] prove his intent by clear and convincing

evidence" (citing M.C.L. § 15.363(4))).

-19-

But here, too, whether Lim makes out a prima facie case is similarly inconsequential. As discussed above, Defendants have produced evidence sufficient to show that there was a non-discriminatory basis for his termination. And, Lim has not produced evidence sufficient to reasonably question whether Defendants' reasons are legitimate. As such, Lim's WPA claim should likewise fail to survive summary judgment.

### C.   Termination in Violation of Michigan Public Policy

As an exception to the general rule that an at-will employee is subject to termination at any time for any or no reason, Michigan recognizes three situations in which "the discharge [of an at-will employee] is so contrary to public policy as to be actionable[:]"

> when (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty, (2) the employee is discharged for the failure or refusal to violate the law in the course of employment, and (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment.

*Edelberg v. Leco Corp.*, 599 N.W.2d 785, 786-87 (Mich. App. 1999) (internal citations omitted).

Here, Lim argues that his termination was against public policy, because it resulted from his refusal to violate internal and external regulations; and, because he was about to report these violations to a public body (Dkt. No. 40 at ¶¶ 165-70). These are the precise circumstances which found his WPA claim. And, notwithstanding Lim's lack of admissible evidence and failure to conduct discovery, "[t]he WPA provides the exclusive remedy for such retaliatory discharge and consequently preempts common-law public-policy claims arising from the same activity." *Anzaldua v. Neogen Corp.*, 808 N.W.2d 804, 808 (Mich. App. 2011) (citing *Dudewicz v. Norris–Schmid, Inc.,* 503 N.W.2d 645 (Mich. 1993), overruled in part on other grounds by *Brown v. Detroit Mayor,* 734 N.W.2d 514 (Mich. 2007)). Moreover, Michigan courts have not extended the

public policy exception to discharges that result from an employee's decision to internally report violations of law. *See Korte v. Ford Motor Co, Inc.*, 10-CV-10475, 2011 WL 97116, at *5 (E.D. Mich. Jan. 12, 2011) (citing *Cushman–Lagerstrom v. Citizens Ins. of America,* 72 Fed. Appx. 322, 328-29 (6th Cir.2003)). Lim's public policy claim should be **DISMISSED WITH PREJUDICE**.

### D. *Lim's Remaining State Law Claims*[14]

#### 1. *Negligence, Gross Negligence, and Willful, Wanton, or Reckless Conduct (Counts IV, V, and XVII)*

Lim's negligence claim requires that he show (1) Defendants owed him a duty; (2) Defendants breached that duty; (3) that breach caused Lim injuries; and, (4) Lim suffered damages. *Wagner v. Misener*, 289144, 2010 WL 746425, at *2 (Mich. Ct. App. Mar. 4, 2010). Lim does not allege facts sufficient to meet the requisite elements. For example, this Magistrate Judge does not see – nor does Lim articulate – a specific common law duty that Defendants owed Lim and breached. Rather, without any substantiation, Lim alludes to the circumstances which precipitated his Title VII claims (Dkt. No. 40 at ¶¶ 105-10).[15] Yet, "a violation of an anti-discrimination law is not a separate claim from a breach of a duty to comply with that law." *Sanders v. Sw. Airlines Co.*, 86 F. Supp. 2d 739, 745 (E.D. Mich. 2000). Simply put, Lim did not attempt to gather any evidence of his claims during discovery, and the record does not show that Defendants' conduct involved an unreasonable risk of harm to Lim. *Moning v. Alfono*, 254

---

[14] In addition to the claims listed below, Lim also originally included a First Amendment free speech claim (Dkt. No. 40 at ¶¶ 182-83). He has since withdrawn it (Dkt. No. 113 at p. 17 (CM/ECF)).

[15] This is clear in Lim's response to Defendants' motion for summary judgment. In defense of his negligence claim, he cites the following as evidence of Defendants' alleged failure to act reasonably: "not following company rules and laws and regulations, ignoring/dismissing plaintiff's safety concerns, [and] making false statements" (Dkt. No. 113 at p. 15 (CM/ECF)).

N.W.2d 759, 762 (Mich. 1977).

Lim concurrently argues Defendants' conduct constitutes gross negligence; he cites no additional facts to support this claim (Dkt. No. 40 at ¶¶ 111-15; Dkt. No. 113 at pp. 14-15).[16] But, "if [D]efendant[s] [] owed no duty to [Lim], then [his] gross negligence claim is unenforceable as a matter of law." *Cheek v. Twp. of Clinton*, 289403, 2010 WL 2867967, at *4 (Mich. Ct. App. July 22, 2010). Moreover, gross negligence requires a greater showing than negligence: it involves "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 222 (Mich. 2008) (*quoting* MCL 691.1407(7)(a)). As such, he cannot provide evidence sufficient to support a claim of gross negligence.

Lim, nevertheless, argues that his gross negligence claim should survive because Defendants' willful, wanton, or reckless conduct has been well-established (Dkt. No. 113 at p. 15). But, Lim fails to make out his claim of willful, wanton, or reckless conduct, too. Such a claim requires Lim to show Defendants (1) knew of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) were able to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; and, (3) neglected to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.[17] *Taylor v. Laban*, 616 N.W.2d 229, 234 (Mich. App. 2000) (citing *Miller v. Inglis*, 567 N.W.2d 253 (Mich. App. 1997)). As with his other tort law claims, with no evidentiary support and no discovery efforts undertaken to find it, Lim is in no better a position to

---

[16] In fact, much of the support he offers in defense of his state law claims is the simple recitation of each claim's elements.

[17] As examples of the disastrous harm Lim alleges, he notes Tisack's allegedly false investigation report, and the allegedly "false and fabricated" information that was reported to Wisconsin and Virginia (Dkt. No. 113 at p. 15).

make out his claim of willful, wanton, or reckless conduct (Dkt. No. 40 at ¶¶ 179-81; Dkt. No. 113 at p. 15). As such, each of these three claims should be **DISMISSED WITH PREJUDICE**.

### 2. Negligent Hiring, Training, and Retention (Count VI)

To make out a claim of negligent hiring, training or retention, Lim must (1) present evidence of the appropriate standard for hiring, training, and retaining of THI employees; and (2) show that Defendants knew or should have known that one or more of its employees was likely to harm him. *Sanders*, 86 F. Supp. 2d at 746 (citing *Poe v. City of Detroit*, 446 N.W.2d 523, 530 (Mich. App. 1989); *Hersh v. Kentfield Builders, Inc.*, 189 N.W.2d 286, 289 (Mich. 1971)).

Lim argues that because Defendants failed to hire, train, and retain qualified personnel, he suffered harm, and internal and external regulations have been violated (Dkt. No. 40 at ¶¶ 116-21).[18] He presents no evidence of the applicable standards for hiring, training, or retaining THI's employees. Instead, he notes Proctor's alleged contribution to a number of 2004 medical device recalls and the 2004 bankruptcy of Access CardioSystems, Inc., where Proctor was previously employed as Vice President of Regulatory Affairs and Quality Assurance (Dkt. No. 40 at p. 23). Lim suggests that this is evidence that Defendants or its employees were likely to commit an act of physical injury or violence against him; it is not. What Lim presents is arguably relevant and patently insufficient to make out a claim of negligent hiring, training, or retention. As such, this claim should be **DISMISSED WITH PREJUDICE**.

---

[18] The harm he alleges includes "discriminatory and retaliatory discharge, humiliation, extreme emotional distress, mental anguish, insomnia, noticeable loss of his hair, and enjoyment of life" (Dkt. No. 40 at p. 23 (CM/ECF)).

-23-

### 3. Breach of Contract, Interference of Contractual Rights, and Interference of Business Relationship or Expectancy in a Business Relationship (Counts VIII, VII, and X)

To make out a breach of contract claim, Lim must show (1) the existence of a valid contract between the parties; (2) the terms of that contract; (3) that THI breached the contract; and, (4) that the breach caused his injury. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999).

Lim alleges that Defendants breached *all* terms in a valid contract (Dkt. No. 113 at p. 14). He does not elaborate further; but, in support, Lim's complaint states that Defendants coerced him to violate internal and external regulations, and acted in concert to prevent him from performing his job duties (Dkt. No. 40 at ¶¶ 127-30). Meanwhile, no contract existed between Lim and any Defendant other than THI: THI and Lim entered into a confidentiality agreement and relocation agreement, neither of which Lim mention (Dkt. No. 103 at p. 26). But, no employment contract existed between Lim and THI – his employment paperwork clearly states that he was brought on as an at-will employee (Dkt. No. 103, Ex. C). Lim's conclusory statements do not suffice to show the requisite elements of a breach of contract claim. As such, this claim should be **DISMISSED WITH PREJUDICE**.

Because Lim cannot make out a breach of contract claim, he likewise fails to make out a claim of intentional interference of contractual rights. Such a claim requires Lim to show (1) the existence of a contract; (2) a breach of the contract; and, (3) an unjustified instigation of the breach by Defendants. *Knight Enterprises v. RPF Oil Co.*, 829 N.W.2d 345, 348 *appeal denied,* 830 N.W.2d 755 (Mich. App. 2013) (internal citations omitted). The only support that Lim offers for this claim is in his complaint: he cites to Tisack's investigation report, and claims that she caused

him to be removed and broke a contract between he and THI/TCVS (Dkt. No. 40 at ¶¶ 122-26). This is not sufficient to make out his claim; it should be **DISMISSED WITH PREJUDICE** (Dkt. No. 113 at p. 16).

Lim's support for his claim of intentional interference of business relationship or expectancy is similarly lacking. Such a claim requires that he show (1) the existence of a valid business relationship or expectancy; (2) Defendants' knowledge of the relationship or expectancy; (3) an intentional interference by Defendants inducing or causing a breach or termination of the relationship or expectancy; and, (4) damages to Lim. *Badiee v. Brighton Area Sch.*, 695 N.W.2d 521, 538 (Mich. App. 2005). Lim bases his claim on Tisack's conduct, alleging that she caused him to be removed from THI and severed his relationship with a recruiter (Dkt. No. 40 at ¶¶ 137-40; Dkt. No. 113 at p. 16). But, Lim provides no evidence to support his claim beyond conclusory statements. Lim's claim should be **DISMISSED WITH PREJUDICE**.

### 4.      *Defamation – Slander and Libel (Counts XIX and XV)*

To make out a claim of defamation, Lim must show (1) a false and defamatory statement concerning him; (2) an unprivileged communication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and, (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. *Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005). Under Michigan law, libel is based on written defamatory statements, and slander is based on spoken defamatory statements.

Plaintiff's defamation claims are based on statements Defendants allegedly made in telephone communications with a recruiting firm following Lim's termination; Tisack's allegedly false statements during unemployment hearings in Virginia and Wisconsin; and, Tisack's

-25-

allegedly false written investigation report (Dkt. No. 40 at ¶¶ 131-36, 171-73). Lim fails to clearly specify what false and defamatory statements form the basis of his claims; and, aside from conclusively stating that these statements were false, Lim presents no evidence to substantiate their falsity. Furthermore, whatever evidence he proffers as support for defamation related to the Wisconsin and Virginia unemployment proceedings is inadmissible.[19] As such, these claims should also be **DISMISSED WITH PREJUDICE**.

### 5.    *Fraudulent or Negligent Misrepresentation (Counts XII and XIII)*

Fraudulent misrepresentation requires Lim to prove six elements:

(1) Defendants made a material misrepresentation; (2) the representation was false; (3) when Defendants made the representation, they knew it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (3) Defendants made the representation with the intention that Lim would act upon it; (5) Lim acted in reliance upon it; and, (6) Lim suffered damage.

*Bergen v. Baker*, 691 N.W.2d 770, 774 (Mich. App. 2004). "Allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Bucciareli v. Nationwide Mut. Ins. Co.*, 662 F.Supp.2d 809, 815 (E.D.Mich.2009) (citations omitted).

In support of his claim, Lim states that: during his interview, Proctor told him that he would be managing five staff in the regulatory affairs department, but, upon starting work, Proctor told Lim that he had promoted a senior regulatory affairs specialist to the manager position; Proctor

---

[19] *See* Wis. Stat. § 108.101(1) ("No finding of fact or law, determination, decision or judgment made with respect to rights or liabilities under this chapter is admissible or binding in any . . . judicial proceeding in law or in equity not arising under this chapter[.]"); Va. Code. § 60.2-623(B) ("[n]either such information, nor any determination or decision rendered under the [pertinent] provisions . . . shall be used in any judicial . . . proceeding other than one arising out of the provisions of this title").

diminished Lim's responsibilities such that he could not perform his job duties; and, Proctor failed to disclose facts surrounding the Premarket Approval Application of DuraHeart (Dkt. No. 40 at ¶¶ 148-64; Dkt. No. 113 at p. 16). As with most all of Lim's claims, these allegations are supported by nothing but Lim's own conclusory statements, statements which do not correspond to each requisite element of his proffered claim. This claim should also be **DISMISSED WITH PREJUDICE**.

### 6.      *Intentional Infliction of Emotional Distress (Count XVI)*

In order to make out a claim of intentional infliction of emotional distress, Lim must show (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and, (4) severe emotional distress. *Roberts v. Auto–Owners Insurance Co.*, 374 N.W.2d 905, 908 (Mich. 1985). Moreover,

> liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Id.* at 908-09 (quoting *Restatement (Second) of Torts* § 46 cmt. d (1965)).

Lim alleges Defendants caused him severe emotional distress because they acted in concert to adulterate medical device products, fabricated Tisack's investigation report, and falsely accused Lim (Dkt. No. 40 at ¶¶ 174-78). Tisack's report could be viewed as an insult to an employee involved in a good faith effort to better his employer, but nothing more. The remaining conduct is no closer to being "so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency[.]" *Roberts*, 374 N.W.2d at 911 (internal citation omitted).

Furthermore, Lim presents no evidence of severe emotional distress: he failed to submit to a

physical examination. As such, this claim should be **DISMISSED WITH PREJUDICE**.

### 7.      *Civil Conspiracy*

Lim next alleges civil conspiracy against Defendants. "A civil conspiracy is a combination

of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose,

or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia

Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. App. 1992) (internal citations omitted).

Lim states that Proctor, Pinon, Smith, and Tisack "had pre-conceived a plan and

unlawfully acted in concert to cover up quality compromising activities in utter disregard of

patient safety concerns by . . . ignoring adequate procedures and performance requirements for

their self-serving purposes"; and, they fabricated the investigation of his complaints (Dkt. No. 40

at ¶¶ 141-47).

Under Michigan law, "a claim for civil conspiracy may not exist in the air; rather, it is

necessary to prove a separate, actionable, tort." *Early Detection Ctr., P.C., v. New York Life Ins.

Co.*, 403 N.W.2d 830, 836 (Mich. App. 1986) (internal citations omitted); *Admiral Ins. Co.*, 486

N.W.2d at 359. Because none of Lim's tort law claims create a genuine issue of fact sufficient to

withstand Defendants' summary judgment motion, this claim, too, should be **DISMISSED WITH

PREJUDICE**. *See Battah v. ResMAE Mortgage Corp.*, 746 F. Supp. 2d 869, 875 (E.D. Mich.

2010).

### E.  Defendants' State Law Counterclaims

What remains, then, are Defendants' state law counterclaims.[20]  Even if the Court finds that Defendants have plead viable state law counterclaims, "district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if[] the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *see also Grace v. USCAR*, 521 F.3d 655, 679-80 (6th Cir. 2008) (recognizing it is within a court's discretion to determine whether to continue to exercise supplemental jurisdiction over any remaining state law claims when: (1) a court's subject matter jurisdiction is predicated on federal question jurisdiction; and, (2) all federal claims are dismissed). "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citations and internal quotations omitted); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

This is not such a case. This Magistrate Judge recognizes that it is within this Court's discretion to exercise jurisdiction over Defendants' remaining counterclaims. However, Defendants' counterclaims – which primarily concern facts and circumstances prior to Lim's employment with THI – are not so directly related to Lim's claims – which primarily concern facts and circumstances that took place during the course of Lim's employment or shortly thereafter – as to warrant continuation of this litigation on those claims alone. Moreover, Defendants'

---

[20] Defendants allege that, during the application process, Lim made false representations to THI regarding his employment qualifications, experience, and prior work record; and that THI relied on those qualifications, and was ultimately damaged because of that reliance (Dkt. No. 22 at ¶¶ 9-15). Accordingly, they bring various state law counterclaims against Lim: unjust enrichment, restitution, and fraudulent or negligent misrepresentation (Dkt. No. 22 at ¶¶ 16, 23-26).

counterclaims are based exclusively in state law. As such, this Court should decline to exercise supplemental jurisdiction over Defendants' counterclaims – they should be **DISMISSED WITHOUT PREJUDICE**, and, consequently, the portion of Defendants' motion for summary judgment pertaining to its counterclaims should be **DENIED AS MOOT**.

### VII.   CONCLUSION

For the above-stated reasons, this Magistrate Judge **RECOMMENDS** that Lim's motion be **DENIED**, and Defendants' motion for summary judgment be **GRANTED** as to Plaintiff's claims, and **DENIED** as to Defendants' counterclaims, which should be **DISMISSED WITHOUT PREJUDICE**.[21] Defendants' motion for contempt and for sanctions should be **DENIED AS MOOT**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

---

[21] In their reply brief, Defendants also request that this Court sanction Lim for his continued reliance on "slanderous attacks and name calling," among other disruptive litigation tactics (Dkt. No. 116 at p. 8 (CM/ECF)). Those requests are **DENIED AS MOOT**.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:   December 9, 2013

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 9, 2013, by electronic and/or ordinary mail.*

*s/Eddrey Butts*
*Case Manager for Magistrate Judge Mark A. Randon*